**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**UNITED STATES OF AMERICA,**

                        **Plaintiff,**

 **v.**

                                                **24-CR-163A**

**JOHN W. BURNS,**

                        **Defendant.**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

## DECISION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.

## PRELIMINARY STATEMENT

The defendant, John W. Burns ("the defendant"), is presently charged in two counts of an indictment with having violated Title 18 U.S.C. § 844(i). The government seeks to have the defendant detained while these charges are pending. The defendant seeks release on bail with certain terms and conditions. This Court conducted a detention hearing on the matter on February 13, 2025 in which the government proceeded by proffer and the defendant presented witness testimony.

Upon completion of the hearing, the matter was taken under advisement.

## FACTS

Initially the defendant was charged with having violated 18 U.S.C. § 844(i) in a single count Criminal Complaint (24-MJ-95) on September 5, 2024, and he made an initial appearance on that Complaint before this Court on September 6, 2024.   At this initial appearance, the government moved to have the defendant detained and a detention hearing was scheduled for September 10, 2024.

On September 10, 2024, this Court was advised that there appeared to be an issue as to the defendant's mental competency and defense counsel requested that a mental evaluation of the defendant be conducted before a detention hearing was held. Even though the government agreed that the defendant should be mentally evaluated, it requested that the scheduled detention hearing be held on September 10, 2024.   After hearing from the government's counsel, the defendant's counsel and the U.S. Probation Officer, this Court concluded that there was sufficient information presented to cause the Court to have a concern about the defendant's competency and his ability to assist in his defense not only to the charges against him, but also in resisting the government's motion to have him detained.   As a result, the detention hearing was adjourned and the Court directed the U.S. Probation Officer to make arrangements to have a mental evaluation of the defendant at the jail facilities in which he was being

housed by the U.S. Marshals Service.   A status conference was then scheduled for September 19, 2024 for a report on the mental evaluation of the defendant.   At this status conference of September 19, 2024, the Court was advised the defendant was housed in the Chautauqua County Jail facility and that a health evaluation of the defendant had been made at that facility and that no issue of mental competency of the defendant was raised in the evaluation.   However, the defendant requested that he undergo an evaluation by Margaret A. Stutzman Addiction Treatment Center ("Stutzman") and that the report of the Chautauqua County Jail facility be forwarded to Stutzman.   The U.S. Probation Officer in this case advised the Court that Stutzman could review the evaluation report and make a decision based on that report.   The matter was adjourned until September 25, 2024 to allow Stutzman time to receive and review the Chautauqua County Jail report and make an evaluation of its own and to report to this Court.   In the meantime, the defendant continued to be remanded to the custody of the U.S. Marshals Service and the time for purposes of the time requirements under the Bail Reform Act, Rule 5.1 of the Federal Rules of Criminal Procedure and the Speedy Trial Act was excluded pursuant to 18 U.S.C. §§ 3161(h)(1) (A and D), 3161(h)(7)(A) and (B)(iv).

On September 25, 2024, a status report was made to the Court regarding the defendant's mental competency and overall health.   The Court was further advised that the defendant would be accepted into a 28 day substance abuse inpatient residential treatment program if he were not detained as requested by the government.

Although the government was insistent on going forward with the detention hearing, the Court was concerned that further delay would cause the availability of a bed to be lost at the inpatient treatment facility where the defendant would be confined for a period of at least 28 days.   In balancing the interests of members of the community and the rights of the defendant, especially his Constitutional right of presumed innocence, along with the fact that the defendant would be confined in the facility for the 28 day period, this Court released the defendant solely for the purpose of inpatient treatment for his mental health and substance abuse while reserving the government's right to move for detention of the defendant after completion of the 28 day treatment period.   The defendant was released to Finger Lakes Area Counseling and Recovery Agency ("FLACRA") subject to a number of terms and conditions.   One of those conditions was that the defendant abide by all of the rules and regulations of the FLACRA facility while he is a resident there and his treatment program completed.   I further ruled that after the defendant completed the in-patient treatment program, he was to be brought back to court to address the government's motion to have him detained.   Once again, all time was excluded for purposes of the time requirements set forth in the Bail Reform Act, Rule 5.1 of the Federal Rules of Criminal Procedure and the Speedy Trial Act pursuant to the aforesaid provisions under Title 18 of the United States Code.

On December 18, 2024, the defendant was indicted (Dkt. #10) and arraigned on that indictment on January 2, 2025.   The government once again moved to have the defendant detained on that indictment.   In response to the government's

motion to detain, this Court inquired of the probation officer as to what the status was as to the defendant's treatment program at FLACRA.   The probation officer reported that the defendant has been cooperative and compliant with the program and FLACRA's rules and regulations as well as being in compliance with this Court's terms and conditions of release.   The probation officer advised the Court that the defendant has been improving in his health and substance abuse treatment and recommended that the defendant be allowed to continue in the treatment program at FLACRA.   Since the defendant would be moving on to a second stage of treatment wherein there were fewer restrictions and more freedom of movement by the defendant, the Court imposed some additional conditions that the defendant had to comply with in order to remain in the treatment program.

Because the defendant was going to enjoy greater freedom of movement in the second stage of the treatment program at FLACRA, the government requested that the defendant be detained.   This request was rejected at this time and the defendant was allowed to return to FLACRA for continued participation in the treatment program under all of the terms and conditions of limited release imposed by this Court. This second phase of treatment was to last for six months and the defendant would move into the "residential phase" of the program.   As part of the limited release, the Court made it a condition that the defendant be placed in the most restrictive area of the treatment facility until the Probation Office decided that this condition could be modified.

This Court stayed the government's motion to have the defendant detained and a scheduling order as to the indictment was put in place and time was once again excluded.

On January 9, 2025, the defendant was involved in two events at FLACRA with another resident of the facility who, for confidentiality purposes, will only be referred to as Peter.

Sometime during the day or early evening of January 9, 2025, the defendant and Peter became engaged in a shouting match over something, but apparently Peter was calling the defendant a pedophile. However no physical contact occurred and they were separated by staff personnel. Later that evening on January 9, 2025, a report was made to staff personnel at FLACRA that there "was a lot of blood in the third floor men's bathroom on the walls, floor, sink and mirror." (*See* Government Exhibit 1; *see also* testimony of Peer Counselor Rugenstein). The defendant and Peter resided on the third floor. Ms. Rugenstein undertook efforts to determine what had happened in this third floor men's bathroom on January 9, 2025 by interviewing other residents on the floor. Ultimately she learned that there had been some kind of physical confrontation between the defendant and Peter and that the defendant had been "badly pummeled" or "pretty lumped up." (Government Exhibit 1; testimony of Ms. Rugenstein).

When Ms. Rugenstein interviewed the defendant as to what happened, he told her that as "he was entering the bathroom while Peter was about to leave the bathroom, Peter started punching him in the face" and the defendant "put his hands up to defend himself" and "tried to get Peter to stop."   (Government Exhibit 1; testimony of Ms. Rugenstein).

Ms. Rugenstein attempted to interview Peter and find out from him as to what happened in the men's bathroom on January 9, 2025 but he refused to talk to her about it.   It was determined that there were no eyewitnesses to what happened in the men's room on the third floor on January 9, 2025 that resulted in all of the blood that was found there.   Photographs of the defendant's face were taken and clearly show that his face was subjected to a forceful impact which resulted in a bruise and blackened eye area.   (*See* Defendant's Exhibits A-F).   Ms. Rugenstein eventually took the defendant to the hospital that evening for treatment of his wounds.   Ms. Rugenstein learned from other residents that Peter had been "pushing peoples' buttons" and that there were numerous instances where Peter was provoking people.

A report of the events in the third floor men's bathroom on January 9, 2025 was made to the decision makers at FLACRA which resulted in both defendant and Peter being terminated in any further participation of the resident treatment program.

7

When Ms. Rugenstein learned that the defendant had been terminated as a participant in the treatment program, she became upset and disagreed with that decision so much so that she called Jason Briggs, the Executive Vice President of Programs and Clinical Care Management, who made the decision, to express her disagreement with the decision to terminate the defendant and to determine from Mr. Briggs why he made that decision.   In sum and substance of this conversation, Mr. Briggs stated that since the defendant is white and Peter is a minority, it required a "business decision" to terminate both from further participation in the program without determining who was responsible for what had occurred.   (Testimony of Ms. Rugenstein).   During a colloquy between and among the Court and the AUSA and defense counsel, with the Probation Officer present, the Court learned that the Probation Officer also had a telephone conversation with Mr. Michael Downey, Associate Director of Outreach and Engagement at FLACRA, relating to the termination of further participation in the treatment program by the defendant.   This Court asked the Probation Officer to describe her conversation with Mr. Downey.   She stated that Mr. Downey told her "that due to the optics [a minority and a white person] we can't just discharge a person of color."   Hearing this, the Probation Officer asked to speak to Mr. Downey's superior whom she learned was Jason Briggs, Executive Vice President of Programs and Clinical Care Management at FLACRA.   The Probation Officer then had a telephone conversation with Mr. Briggs about the termination of the defendant from further participation in the treatment program.   Mr. Briggs told the Probation Officer that it was a "business decision" and that his "hands were tied."

8

The hearing concluded and decision on the government's motion to detain was taken under advisement.

## DISCUSSION AND ANALYSIS

Pursuant to 18 U.S.C. Section 3142(g), the factors to be considered in the determination of a detention request are:

(1)    the nature and circumstances of the offense charged;

(2)    the weight of the evidence against the person;

(3)    the history and characteristics of the person, including

(A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B)    whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal,

9

state or local law; and

(4)    the nature and seriousness of the danger to any person or

the community that would be posed by the person's

release.

The Bail Reform Act limits the circumstances under which a
district court may order pretrial detention. *See United States
v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 2102, 95 L.Ed.2d
697 (1987). A motion seeking such detention is permitted
only when the charge is for certain enumerated crimes 18
U.S.C. § 3142(f)(1) (crimes of violence, offenses for which
the sentence is life imprisonment or death, serious drug
offenses, or felonies committed by certain repeat offenders),
or when there is a serious risk that the defendant will flee, or
obstruct or attempt to obstruct justice.  *Id.* § 3142(f)(2).
After a motion for detention has been filed, the district court
must undertake a two-step inquiry. *See United States v.
Shakur*, 817 F.2d 189, 194 (2d Cir. 1987). It must first
determine by a preponderance of the evidence, *see United
States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987), that the
defendant either has been charged with one of the crimes
enumerated in Section 3142(f)(1) or that the defendant
presents a risk of flight or obstruction of justice. Once this
determination has been made, the court turns to whether
any condition or combinations of conditions of release will
protect the safety of the community and reasonably assure
the defendant's appearance at trial. *United States v. Berrios-
Berrios*, 791 F.2d 246, 250 (2d Cir.), *cert. dismissed,* 479
U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986).

*United States v. Friedman*, 837 F.2d 48, 49 (2d Cir.1988).

In considering "the nature and circumstances of the offense charged," *i.e.*,

a violation of Title 18 U.S.C. § 844(i), I find that it is a charge constituting a crime of

violence under 18 U.S.C. § 3156(a)(4)(A) because it has "an element of the offense of

the use . . . of physical force against the . . . property of another."   However, this finding

10

does not prevent the Court from considering whether there are terms and conditions of release that can be imposed that will reasonably provide for the protection of the community and its members.   As part of that process, the Court must also examine the evidence presented at the detention hearing to determine whether "clear and convincing evidence" has been presented by the government to warrant a finding of dangerousness by the defendant thereby justifying the defendant's detention.   The following constitutes that analysis.

When the defendant first appeared before this Court on a charge set forth in a Criminal Complaint, I was advised in the Pretrial Services Report that the defendant had expressed "thoughts or an attempted suicide."   The defendant also disclosed to the Pretrial Services Officer that "he has struggled with an alcohol addiction" as well as substance abuse problems.   As a result, I determined that the best course of action to pursue at this time was to determine whether there were any legal issues relating to the defendant's mental competency as well as a means by which his alcohol and substance abuse problems could be addressed before going forward with a detention hearing. This was accomplished by Order of this Court directing the defendant to be admitted to FLACRA as an inpatient resident for participation in a 28 day treatment program and mental evaluation.   Not only did the defendant successfully complete the 28 day program at FLACRA, he continued in a second phase of treatment at that facility as a long-term residential patient.   This program had a duration of 60-90 days.

Since the indictment against the defendant had been filed on December 18, 2024, the arraignment of the defendant was scheduled for January 2, 2025 and the defendant voluntarily appeared along with a FLACRA counselor before this Court on January 2, 2025.   This voluntary appearance by the defendant, knowing he had been indicted on or around December 18, 2024, coupled with a report from the Probation Officer that the defendant "has done exceptionally well" at FLACRA in the treatment program and that she recommended continuation in the program without electronic monitoring because she did "not feel that is necessary while in any type of residential treatment center, satisfied me that the defendant was not a flight risk at this time, notwithstanding the government's request that the defendant be detained on this basis as well as being a danger to the community.

Because the defendant was being fully compliant with the Rules and Regulations of FLACRA and the treatment program wherein he was making exceptional progress, I determined that not only the interests of the defendant would be served, but also those of society by having the defendant continue in the residential treatment program instead of detaining him at this time.   Nevertheless, the government insisted, as it was entitled, to the holding of a detention hearing even though it agreed that the defendant was in need of treatment.

In order not to break the successful momentum of treatment that the defendant was demonstrating, which also constituted a benefit to society, I allowed the

defendant to continue in the long-term treatment program at FLACRA while at the same time putting a Scheduling Order in place so as to move the case along as well.

Unfortunately, on January 10, 2025, the defendant's participation in the treatment program at FLACRA was terminated because of the January 9, 2025 men's room incident.   The government argues that because the defendant's participation was terminated for an alleged rules violation, this constituted a violation of defendant's conditions of release and therefore he must be detained.

### A.  The Evidence Established Or Not Established At the Detention Hearing Held on February 13, 2025

Everyone is in agreement that there were no eyewitnesses as to what occurred in the third floor men's room at FLACRA on January 9, 2025 between the defendant and Peter.   However, there is circumstantial evidence presented that is worthy of consideration by this Court in determining what may have happened and whether the defendant was at fault thereby making his termination justifiable for purposes of detention.

In her sworn testimony, Peer Counselor Rugenstein testified that as a result of her investigation of the incident of January 9, 2025, she learned that Peter had been "pushing peoples' buttons" and that "there were numerous instances where Peter was provoking people."   Witnesses in the cafeteria on January 9, 2025 heard Peter call

the defendant a "pedophile" while he and the defendant were engaged in a shouting match earlier in the evening.   In an interview with two female residents of the third floor where the defendant and Peter were residents, they told her that Peter had been harassing the defendant and calling him a pedophile for days.   When Ms. Rugenstein attempted to interview Peter as to what happened in the men's room on January 9, 2025, he refused to discuss it with her.   She described Peter's demeanor at that time as his being fully covered with his hoody and shortly thereafter saw him dancing and laughing.   When she interviewed the defendant, she noticed that his face was badly bruised.   This is corroborated by the photographs taken of the defendant after the event.   (*See* Defendant's Exhibits A-F).    The defendant was crying and told her that he was fearful of being kicked out of the program.   He did tell her that when he started to enter the men's room, Peter was coming out of it and immediately began punching him in the face.   The bruises on the defendant's face were severe enough to cause Ms. Rugenstein to drive the defendant to the hospital on January 9, 2025.

Ms. Rugenstein also testified that she was familiar with both the defendant and Peter as a Peer Counselor at FLACRA and based on her experience with both, she did not believe the defendant was responsible for what happened in the men's room on January 9, 2025.   Her conviction in this regard was so strong that she voluntarily took it upon herself to call Jason Briggs, the Executive Vice President of Programs and Clinical Care Management at FLCARA and express her disagreement with the decision to discharge the defendant from further participation in the treatment program especially

14

since he had successfully completed the first phase of the program and was scheduled to move to the second stage on the morning of January 9, 2025 but did not because of a "paperwork problem."   When she asked Mr. Briggs why he terminated the defendant from the program, he told her that he was concerned with potential racial discrimination (the defendant is white and Peter is a minority) problems if they only terminated Peter and not the defendant and, therefore, it was a "business decision."

I observed the demeanor of Ms. Rugenstein throughout her testimony and find her to be a credible witness and entirely accept her testimony.

It is also pointed out that the Probation Officer in this case had a telephone conversation with Michael Downey, Associate Director of Outreach and Engagement at FLACRA when she investigated the events of January 9, 2025 and the termination of defendant's participation in the program.   In that conversation, Mr. Downey told her that "due to optics we can't just discharge a person of color" and that Jason Briggs said that "his hands were tied."   I also find the Probation Officer to be a credible witness and accept her testimony in its entirety.[1]

The government chose to proceed by proffer in presenting its case for detention of the defendant as it had a right to do.   *United States v. Martir*, 782 F.2d

---

[1] Based on this Court's experience as a practicing attorney handling employment discrimination cases and as a sitting judge for approximately twenty-five years, I find the explanation that this was purely a "business decision" because "of the optics" to be a typical reaction by employers in resolving disputes between employees.

1141, 1147 (2d Cir. 1986).[2]    The government presented two exhibits, Government

Exhibit 1, a text message from the Probation Officer to the AUSA in this case dated

January 10, 2025, and Government Exhibit 2, a copy of FLACRA's "Resident's

Handbook" containing Rules and Regulations relating to the treatment program.    The

government makes specific reference to page 10 of Government Exhibit 2 wherein the

issue of "Violent or Destructive Behavior" is addressed.    This provision states that

"violent or destructive behavior" as well as "intimidation or aggressive behavior, or racist

or sexist remarks are not tolerated" and that "physical or verbal abuse may result in

administrative discharge."    However, this provision also states that "each case will be

reviewed by Residential Leadership and the MDT to determine the best course of

action" and that "clients will be given in writing a notice of decision to discharge."    No

evidence was presented by the government or anyone else that the event of January 9,

2025 between the defendant and Peter was "reviewed by Residential Leadership and

MDT to determine the best course of action" and no evidence was presented by the

government or anyone else that the defendant was given "written notice of decision to

discharge."    What is established by clear and convincing evidence is that "due to

optics," *i.e.*, a minority and a white person, a "business decision" with the purpose of

avoiding "potential racial discrimination problems" was made by terminating both

individuals.    The government has not presented any evidence to establish that the

defendant was the instigator in the men's room incident or that he actually violated the

---

[2]  The government stated that it had issued a subpoena to FLACRA for production of records and to two witnesses who are employees of FLACRA, to wit, Michael Downey and Ms. Wescott, but they were not honored because of a legal dispute as to the validity of the subpoenas.

rules of FLACRA while a resident patient.    Furthermore, I find that FLACRA supervisory officers did not make a determination on the issue of fault or responsibility as to what occurred on January 9, 2025 in the third floor men's room between the defendant and Peter.    It was purely a "business decision" to terminate both the defendant and Peter so as to avoid a potential claim by Peter or anyone else that FLACRA was guilty of racial discrimination.    As a result, I find that the government has failed to prove that the defendant violated a term or condition of his temporary release for participation in the FLACRA inpatient treatment program.

I disagree with the government's assertion that there are no terms and conditions that I can impose that would reasonably assure the safety of the community and its members and therefore the defendant must be detained as being a person of danger.    The evidence received throughout the history of this case and at the detention hearing causes me to conclude that the defendant does not constitute a danger that requires his detention.    He has successfully complied with the inpatient treatment programs at FLACRA and "done exceptionally well" while there in the program as reported by the Probation Officer.    As previously stated, the defendant voluntarily appeared for his arraignment on January 2, 2025 to answer the charges in the indictment filed on December 18, 2024.    The evidence establishes that the defendant has made positive strides in addressing his substance abuse issues through treatment and counselling and it is my opinion that this approach should be continued rather than have the defendant detained and sitting in a jail facility without any treatment and

counselling.   Therefore, I find that the following terms and conditions of release will reasonably assure the appearance of the defendant and provide measures to assure the safety of the community.

The conditions previously imposed by this Court as set forth in Attachment A, except for inpatient treatment, which is hereby made a part of this Decision and Order, are once again imposed on the defendant.   In addition to those conditions, the defendant is required to reside with his parents at their residence in Grand Island, New York under the condition of home incarceration with GPS monitoring as directed and monitored by the U.S. Probation Office.   The defendant shall continue with his substance abuse and mental health treatment as directed by the U.S. Probation Office and contribute toward the cost of such programs in the form of a co-payment, the amount of which will be determined and directed by the U.S. Probation Office.   The defendant's release is with ZERO tolerance, meaning that if the defendant fails to comply with any condition of release and/or any reasonable directive given by a representative of the U.S. Probation Office, his bail will be revoked and he will be kept locked up until this case is resolved.

## **CONCLUSION**

Upon completion of any additional processing by either the U.S. Marshals Service and/or the U.S. Probation Office, the defendant is to be released subject to all

of the terms and conditions of release that I have now imposed.

It is hereby **ORDERED** pursuant to 28 U.S.C § 636(b)(1) that:

This Decision and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Decision and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Decision and Order in accordance with the above statue, Fed.R.Crim.P. 58(g)(s) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to**

**comply with the provisions of Rule 58.2, or with the similar provisions of**

**Rule 58.2 (concerning objections to a Magistrate Judge's Decision and Order),**

**may result in the District Judge's refusal to consider the objection.**


DATED:     February 19, 2025
           Buffalo, New York


                              *S/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **UNITED STATES MAGISTRATE JUDGE**

ATTACHMENT A

AO 199A Order Setting Conditions of Release (Rev. 04/21)                                      Page 1 of 3 Pages

Judge - HKS
AUSA - R. Antione
USPO - J. Dzina

# UNITED STATES DISTRICT COURT
### for the
### Western District of New York

United States of America )    **ORDER SETTING CONDITIONS**
v. )    **OF RELEASE**
)
John W. Burns )
*Defendant* )    Case Number: 1:24 CR 163

IT IS ORDERED that the release of the defendant is subject to these conditions:

(1)   The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2)   The defendant must cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C. § 14135a.

(3)   The defendant shall immediately advise the court, defense counsel, U.S. Attorney and the U.S. Probation and Pretrial Services office in writing before any change in address and telephone number.

(4)   The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed.  The defendant shall appear at (if blank, to be notified)

___U.S. District Court___ on _____ and as directed thereafter.
     *Place*                                    *Date and Time*

### Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released provided that:

(X)  (5)   The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

( )  (6)   The defendant executes an unsecured bond binding the defendant to pay the United States the sum of
_____ dollars ($_____ )  in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

### Additional Conditions of Release

Pursuant to 18 U.S.C. § 3142(c)(1)(B), the court may impose the following least restrictive condition(s) only as necessary to reasonably assure the appearance of the person as required and the safety of any other person and the community.

IT IS FURTHER ORDERED that the release of the defendant is subject to the conditions marked below:

( )  (7)   The defendant is placed in the custody of:
     (Name of person or organization): _____

     (City and state): _____    (Tel. No.) _____

who agrees (a) to supervise the defendant in accordance with all the conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled court proceedings, and (c) to notify the court immediately in the event the defendant violates any conditions of release or is no longer in the custodian's custody.

Signed: _____    _____
                                  *Custodian or Proxy*                  *Date*

*DISTRIBUTION:*    COURT    DEFENDANT    PRETRIAL SERVICES    U.S. ATTORNEY    U.S. MARSHAL

AO 199B(1)  Additional Conditions of Release (Rev. 04/21)                                                                    Page 2 of 3 Pages

## Additional Conditions of Release (continued)

(8)  The defendant shall:

( X )  (a)  Report to the Pretrial Services within 24 hours of release, telephone number  (716) 551-4241  , and as directed thereafter.

( X )  (b)  Execute a bond or an agreement to forfeit upon failing to appear as required the following sum of money or designated property:
_____

( )  (c)  Post with the court the following indicia of ownership of the above-described property, or the following amount or percentage of the above-described:

( )  (d)  Execute a bail bond with solvent securities in the amount of $ _____

( )  (e)  Maintain or actively seek employment.

( )  (f)  Maintain or commence an educational program.

( X )  (g)  Surrender any passport/passport card to: **the Clerk of the Court**[1].  Surrender other international travel documents to appropriate authorities (i.e. Enhanced Driver's License or NEXUS card).

( X )  (h)  Not obtain a passport or other international travel document (i.e. Enhanced Driver's License or NEXUS card).

( X )  (i)  Restrict travel to:  WDNY  , unless court permission is granted to travel elsewhere.

( X )  (j)  Remain at a verifiable address as approved by Pretrial Services.

( )  (k)  Avoid all contact with codefendants and defendants in related cases unless approved by Pretrial Services.

( X )  (l)  Avoid all contact, directly or indirectly, with any persons who are or who may become a victim or potential witness in the subject investigation or prosecution, including but not limited to:

( X )  (m)  Submit to a mental health evaluation and/or treatment as approved by Pretrial Services.  The defendant shall contribute to the cost of services rendered in an amount to be determined by the probation officer based on ability to pay or availability of third party payments.

( )  (n)  Return to custody each (week)day as of _____ after being released each (week)day as of _____ for employment, schooling, or the following limited purpose(s):

( )  (o)  Maintain residence at a halfway house or community corrections center, as approved by Pretrial Services.

( X )  (p)  Refrain from possessing a firearm, destructive device, or other dangerous weapon.

( X )  (q)  Refrain from ( X ) any  ( ) excessive use of alcohol.

( X )  (r)  Refrain from any use or unlawful possession of a narcotic drug and other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner, and/or any other mind altering substances.

( X )  (s)  Defendant may not use or possess marijuana, regardless of whether Defendant has been authorized to use or possess medical marijuana under state law.

( X )  (t)  Submit to any method of testing required by the pretrial services office or the supervising officer for determining whether the defendant is using a prohibited substance.  Such methods may be used with random frequency and include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing, including co-payment.

( X )  (u)  Participate in a program of inpatient or outpatient substance abuse therapy and counseling approved by Pretrial Services.  The defendant shall contribute to the cost of services rendered in an amount to be determined by the probation officer based on ability to pay or availability of third party payments.

( X )  (v)  Refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing or electronic monitoring which is (are) required as a condition(s) of release.

( )  (w)  Participate in one of the following location restriction programs and comply with its requirements as directed.
    ( )  (i)  **Curfew.** You are restricted to your residence every day ( ) from _____ to _____, or ( ) as directed by the pretrial services office or supervising officer; or
    ( )  (ii)  **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or
    ( )  (iii)  **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and court appearances or other activities specifically approved by the court; or
    ( )  (iv)  **Stand Alone Monitoring.** You have no residential curfew, home detention, or home incarceration restrictions.  However, you must comply with the location or travel restrictions as imposed by the court.
        Note: Stand Alone Monitoring should be used in conjunction with global positioning system (GPS) technology.

( )  (x)  Submit to the following location monitoring technology and comply with its requirements as directed:
    ( )  (i)  Location monitoring technology as directed by the pretrial services or supervising officer; or
    ( )  (ii)  SmartLink; or
    ( )  (iii)  Radio Frequency; or
    ( )  (iv)  GPS.

( )  (y)  Pay all or part of the cost of location monitoring based upon your ability to pay as determined by the pretrial services or supervising officer.

( X )  (z)  Report within 72 hours, to Pretrial Services any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

( X )  (aa)  Abide by all rules and regulations of Residential Treatment.

( X )  Resolve any Active Warrants

[1] For U.S. Passports, the passport will be returned to the U.S. Office of Passport Policy and Planning upon conviction; For Foreign Passports, the passport will be forwarded to the Bureau of Immigration and Customs Enforcement (ICE); The passport will **only** be returned to defendant if the case is dismissed.

*DISTRIBUTION:*       COURT        DEFENDANT        PRETRIAL SERVICES        U.S. ATTORNEY        U.S. MARSHAL

AO 199C  Advice of Penalties and Sanctions (Rev. 09/05)                                    Page 3 of 3 Pages

### Advice of Penalties and Sanctions

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

A violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine or both.

The commission of a Federal offense while on pretrial release will result in an additional sentence of a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be in addition to any other sentence.

Federal law makes it a crime punishable by up to 10 years of imprisonment and a $250,000 fine or both to obstruct a criminal investigation. It is a crime punishable by up to ten years of imprisonment, and a $250,000 fine or both to tamper with a witness, victim or informant; to retaliate or attempt to retaliate against a witness, victim, or informant; or to intimidate or attempt to intimidate a witness, victim, juror, informant or officer of the court. The penalties for tampering, retaliating and intimidation are significantly more serious if they involve a killing or attempted killing.

If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

    (1)    an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

    (2)    an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

    (3)    any other felony, you shall be fined not more than $250,000 or imprisoned for not more than two years, or both;

    (4)    a misdemeanor, you shall be fined not more than $100,000 or imprisoned for not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be in addition to the sentence for any other offense. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
Signature of Defendant

Clifton Springs NY
_____
City and State

### Directions to United States Marshal

(X) The defendant is ORDERED released after processing.

(  ) The United States Marshal is ORDERED to keep the defendant in custody until notified by the clerk or judicial officer that the defendant has posted bond and/or complied with all other conditions for release. The defendant shall be produced before the appropriate judicial officer at the time and place specified, if still in custody.

Date: January 2, 2025

_____
Signature of Judicial Officer

H. Kenneth Schroeder, Jr.
_____
Name and Title of Judicial Officer
U S Magistrate Judge